NOT FOR PUBLICATION                                              (Docs. No. 95 and 98)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

JESSE VELASQUEZ,

    Plaintiff,

v.

Dr. ALLEN MARTIN, et al.

    Defendants.

Civil No. 09-cv-03230 (RBK/AMD)

**OPINION**

**KUGLER**, District Judge.

    This matter was opened to the Court by Plaintiff Jesse Velasquez, formerly a prisoner confined at South Woods State Prison, filing a Complaint alleging various violations of his constitutional rights, including the violation of his Eighth Amendment right to adequate medical care.

    Now pending before this Court are the Motions [95] and [98] of Defendants Dr. Allen Martin ("Dr. Martin"), Correctional Medical Services, Inc. ("CMS"), Joy Lynn Kwap ("Kwap"), and St. Francis Medical Center ("St. Francis") (collectively, "Defendants") for Summary Judgment. Because of Velasquez's failure to exhaust his administrative remedies and his failure to create a genuine issue of material fact as to some claims, this Court grants the Defendants' Motions.

I.      **Background**

Velasquez is a T-6 paraplegic, which means he is unable to move his body from his chest down. He was incarcerated in South Woods State Prison from April 26, 2007 to September 20, 2010. Velasquez Dep. at 12-13. He alleges that his right leg and foot began to swell in late May of 2008, and that he informed his nurse of this. His medical notes from that time period mention the use of a lymphedema pump, which helps to reduce swelling. Doc 98-5. On June 11, 2008, he again complained, and Dr. Martin examined him and prescribed two blood thinners. (Although it is not explicitly stated, the Court infers that Dr. Martin is employed by CMS to provide medical care to inmates.) For the next several weeks, nurses checked Velasquez daily and cared for his skin wounds. Occasionally, they noted his bleeding upon removing the wound dressing.

On June 18, Dr. Martin discontinued the use of the pump and temporarily discontinued the use of the blood thinners. On June 25, a nurse noted a small amount of blood on Velasquez's leg. Velasquez says he asked to go to the hospital, but her notes make no mention of it. Doc 98-5 at 38. The next day, the nurse noted "a lot of blood on his bandages," so several nurses double-bandaged him. On June 27, the nurse noted "excessive bleeding in the sacral areas." Doc 98-5 at 23. Dr. Martin again discontinued the use of one of the blood thinners. On June 30, lots of blood was found on Velasquez's bandages. Blood tests were run. Finally, in the early morning hours of July 1, the nurse found him bleeding excessively, a "stream" of blood "seeping out" of his bandages. Doc 98-5 at 7. Dr. Martin ordered Velasquez to the South Jersey Regional Medical Center, and he was transported to the hospital emergency room.

Velasquez stayed at South Jersey Regional Medical Center until July 4, 2008, when he was transferred to St. Francis Medical Center. He alleges that he received bed sores since he was given a regular mattress instead of an air mattress there.

Velasquez filed a number of administrative remedy forms with the New Jersey Department of Corrections related to these medical issues. The State of New Jersey has a two-part remedy system, which involves either a routine inmate request or an interview request and an administrative appeal. Doc 98-6 at 2. Velasquez testified that he did not appeal from the responses to those grievances. Dep. at 51-85.

Eventually, Velasquez filed a Complaint in this Court, alleging various violations of his constitutional rights, particularly the Eighth Amendment right to adequate medical treatment, and alleging state claims for negligence and medical negligence. He seeks damages pursuant to 42 U.S.C. § 1983. Defendants CMS, Dr. Martin, Kway, and St. Francis all move for summary judgment.

## II.     Summary Judgment

"Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." HIP Heightened Independence and Progress, Inc. v. Port. Auth. of N.Y. and N.J., 693 F.3d 345, 351 (3d Cir. 2012) (citing Fed. R. Civ. P. 56(a)). The Court must "construe facts and draw inferences in favor of" the non-moving party. Id.

The Eighth Amendment requires prison officials to provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To prevail on his claims that his constitutional right was violated, Velasquez must show (1) a serious medical need and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at

106. As to the first prong, serious medical needs include those that have been "diagnosed by a physician as requiring treatment" or that are "so obvious that a lay person would recognize the necessity for a doctor's attention," and those conditions which, if untreated, would result in "life-long handicap or permanent loss." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Regarding the second prong, deliberate indifference results "where prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible residual injury" or "where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal alterations omitted).

But Congress has mandated that prisoners first exhaust their administrative remedies before suing over prison conditions. See Booth v. Churner, 532 U.S. 731, 741 (2001). The Prison Litigation Reform Act provides that no action shall be brought under section 1983 by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

### A. Dr. Martin

Here, Velasquez claims that he experienced several days of excessive internal and external bleeding. The Defendants do not dispute that Velasquez had a serious medical need. In his Motion for summary judgment, Dr. Martin faults Velasquez for failing to allege that the deficient care that he received was for non-medical reasons. But that is not required of every deliberate-indifference claim. See id. Additionally, as this Court noted earlier in this case, there is no suggestion that Dr. Martin made any effort to determine the cause of the excessive bleeding or to diagnose or treat Velasquez's internal bleeding. Dr. Martin has not testified to the contrary.

The medical records show only attempts to staunch and absorb the blood from Velasquez's external wounds.

But Velasquez has failed to exhaust his administrative remedies. He filed several grievances charging at least some of the acts of deliberate indifference on the part of Dr. Martin that he later alleged in this action. He did not go beyond the first step, however, and never sought final administrative review after the prison authority denied relief. This is not sufficient to satisfy the exhaustion requirement of the Prison Litigation Reform Act. See Booth, 532 U.S. at 735 (no exhaustion where a prisoner filed a grievance but did not seek final administrative review after prison authority denied relief). Therefore Velasquez's claims against Dr. Martin are dismissed without prejudice for failure to exhaust his administrative remedies.

### B. Kwap

Kwap moves for summary judgment on the ground that Velasquez never alleged that Kwap was involved in providing medical care. (As she did earlier in this case, Kwap again characterizes the factual allegations against her as being limited to a discussion of the repair of a wheelchair. The Court again disagrees with this characterization.) Velasquez alleges that Kwap was present on June 30, 2008, when Velasquez asked to be taken to the hospital for his bleeding and that she personally participated in decisions related to his serious medical needs. But the medical notes do not indicate that Kwap examined Velasquez on June 30. Doc 98-5 at 8-26. And in his deposition, Velasquez says that she did not provide the "actual face-to-face and daily hands-on medical treatment" that other nurses did. Dep. at 24-25. The evidence in the record does not show a genuine issue as to whether Kwap knew of Velasquez's serious medical need and disregarded it. Additionally, Velasquez failed to exhaust his administrative remedies as to Kwap. The Court grants Kwap's Motion as to the Section 1983 claim against her.

The Court also grants summary judgment to Kwap on Velasquez's state-law medical-malpractice claims. New Jersey law requires Velasquez to submit an affidavit from a licensed medical professional stating that the care, skill, or knowledge exercised by Kwap fell outside acceptable professional standards. See N.J. Stat. Ann. § 2A:53A-27 (2004). Velasquez has not done so. And beyond what he alleged in his complaint, he has shown no evidence that Kwap's care fell outside professional standards.

**C. CMS and St. Francis**

It is well-settled that the doctrine of *respondeat superior* cannot be a basis for Section 1983 liability. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Thus, a corporation under contract with the state cannot be held liable for the acts of its employees or agents. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003). For CMS to be liable, Velasquez "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation" that he alleges. Id. at 583-84. Velasquez alleges that there was a policy to deliver care based primarily upon economic considerations and that there was no policy regarding the administration of blood thinners, though one was needed.

Here, Velasquez testified at deposition that CMS employees never used the right lymphedema pump since they were "just trying to find a shortcut for saving money from medical services." Dep. at 60-61. But other than that bald assertion, there is no evidence that CMS's practices or policies led to the deprivation of Velasquez's rights. Additionally, Velasquez failed to exhaust his administrative remedies against CMS. Therefore, CMS's Motion for summary judgment is granted.

Similarly, the Court dismisses the claims against St. Francis.  First, it is unclear whether St. Francis was acting under color of state law, as required for liability under § 1983.  Even assuming that it was by way of a contract with the prison to provide medical services to inmates, Velasquez's claim against St. Francis suffers from the same deficiency as that against CMS.  He fails to show a policy or practice that led to the deprivation of his constitutional rights.  St. Francis's Motion for summary judgment is granted.


Date:  11/14/12                                                                          /s/Robert B. Kugler         

                                                   Robert B. Kugler
                                                   United States District Judge